UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK STRAZH,<br><br>                Petitioner,<br><br>    v.<br><br>KRISTIN NOEM, et al.,<br><br>                Respondents. | Case No. C26-064-SKV<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

      Petitioner Mark Strazh is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington. Petitioner, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that his re-detention after release from custody on an order of recognizance violates his constitutional right to due process under the Fifth Amendment to the United States Constitution. *See* Dkt. 1 at 2, 15. Respondents, in a return to the petition, argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) and imply that his prior release was revocable at the Government's discretion, without a hearing. *See* Dkt. 6 at 3, 5. Having considered the Petition, the Return, Petitioner's Reply, Dkt. 9, and the governing law, the Court finds that the Government's re-detention of Petitioner, without prior

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

notice or an opportunity to be heard, violated his constitutional right to due process. Accordingly, the Court GRANTS his habeas petition, ORDERS his immediate release from custody, and further ORDERS that he may not be re-detained without first being provided adequate notice of the grounds for his re-detention and a hearing before a neutral decisionmaker.

## I.   BACKGROUND

Petitioner is a twenty-two-year-old native and citizen of Russia. *See* Dkt. 1 at 2. On September 26, 2023, he arrived at the San Ysidro Port of Entry with his mother, father, and three younger siblings. *See id.*; Dkt. 6 at 1. Petitioner was detained, and his family members were paroled into the United States. *See* Dkt. 1 at 2. Petitioner completed a credible fear interview with U.S. Citizenship and Immigration Services ("USCIS"), and USCIS determined that he met the standard for credible fear. *See* Dkt. 6 at 2. On December 23, 2023, Petitioner was paroled with reporting requirements. *See id.*; Dkt. 8-4 at 2 (Notification to Grant Parole). On January 11, 2024, Petitioner was placed on an order of release on recognizance ("OREC"). *See* Dkt. 6 at 2; Dkt. 8-5 at 2 (Order of Release on Recognizance). Amongst other conditions of release, Petitioner could not change his place of residence without advance, written permission from ICE, had to enroll in the Alternatives to Detention ("ATD") program, and had to submit weekly photo reports consisting of a selfie sent through the BI SmartLINK application. *See* Dkt. 1 at 2; Dkt. 9-1 at 3.

After his release, Petitioner applied for asylum as a derivative on his father's application. *See* Dkt. 1 at 3; Dkt. 1-3 at 4. His family has an asylum merits hearing scheduled for October 26, 2026. *See* Dkt. 1 at 3; Dkt. 1-4. After receiving work authorization, he obtained employment as a rideshare driver. *See* Dkt. 1 at 3.

|   |   |
|---|---|
| 1 | The parties dispute Petitioner's compliance with the conditions of his release.  Petitioner |
| 2 | states that he has led a law-abiding life, completed ICE check-ins when instructed, and attended |
| 3 | all of his immigration court hearings.  *See id.*  He avers that he always submitted his required |
| 4 | weekly photo using the BI SmartLINK phone application, though sometimes late within a |
| 5 | twenty-four-hour window.  He also states the same application shares his location with ICE |
| 6 | officers.  *See* Dkt. 9 at 2.  Respondents contend that Petitioner missed thirty ATD photo check- |
| 7 | ins.  *See* Dkt. 6 at 2.  They offer a declaration by a Deportation Officer listing the dates of missed |
| 8 | ATD photo check-ins without any supporting records or documentation.  *See* Dkt. 7.  Based on |
| 9 | those alleged violations, Respondents assert that ICE terminated Petitioner's ATD and revoked |
| 10 | his OREC.  *See* Dkt. 6 at 2. |
| 11 | On December 27, 2025, ICE arrested Petitioner without prior opportunity to contest the |
| 12 | alleged conditions of release violations.  *See* Dkt. 9 at 2.  After his re-detention, Petitioner's |
| 13 | asylum proceedings were severed from his family's proceedings.  *See id.* at 3. |

## II.   DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026).  Here, Petitioner claims his re-detention constitutes a deprivation of liberty without due process of law in violation of the Fifth Amendment to the United States Constitution.  *See* Dkt. 1 at 15; U.S. Const. Amend. V.  He argues that he was previously released on his own recognizance, does not pose a flight risk or danger to the community, and was not afforded a hearing pre-arrest to determine whether changed circumstances justified re-detention.  *See* Dkt. 1 at 4, 12, 15.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  It is well established that due process rights extend "to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

While due process is flexible and adequate procedural protections can vary based on the circumstances, *id.* at 334, courts look to the three-part test established in *Mathews v. Eldridge* to determine what procedures suffice.  The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.  "In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in 'the immigration detention context[,]'" and this Court and other district courts have applied it in cases such as this one that involve re-detention after release. *Yildirim*, 2026 WL 111358, at *2 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022)); *see, e.g.*, *Cabrera Perez, v. Hermosillo*, No. C25-2542-RSM, 2026 WL 100735, at *6 (W.D. Wash. Jan. 14, 2026); *Llanes Tellez v. Bondi*, No. 25-CV-08982-PCP,

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

2025 WL 3677937, at *5 (N.D. Cal. Dec. 18, 2025). Petitioner urges this Court to follow suit. *See* Dkt. 1 at 14–15; Dkt. 9 at 4–5.

In their Return, Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and therefore lawfully detained. *See* Dkt. 6 at 3. They make that argument notwithstanding Petitioner's OREC, which states that, "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations," Petitioner was "released on . . . [his] own recognizance[.]" Dkt. 8-5 at 2. "Section 236 of the Immigration and Nationality Act [("INA")] corresponds to 8 U.S.C. § 1226[,]" while different INA sections correspond to 8 U.S.C. § 1225. *Llanes Tellez*, 2025 WL 3677937, at *3; *Immigration and Nationality Act*, U.S. Citizenship & Immigration Services, https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act (linking INA 236 to 8 U.S.C. 1226, the corresponding U.S. Code section). While Respondents acknowledge that courts in this District "have recently decided that the revocation of pre-detention release requires a pre-detention hearing to determine if that noncitizen is a flight risk or a danger to the community," they disagree, purportedly on grounds that *Mathews* recognized the flexibility of due process. *Id.* at 5. They address none of the *Mathews* factors as applied to this case.

Respondents offer no substantive analysis demonstrating why the Court should now deviate from prior decisions in this District holding that noncitizens already residing in the United States are subject to discretionary detention under Section 1226(a), *see, e.g.*, *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1335–36 (W.D. Wash. 2025), and that due process requires that individuals previously granted release be afforded a hearing prior to re-detention, *see, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). Consistent with this District's precedents, and in view of Petitioner's order of release pursuant to Section 1226, the

1  Court deems Section 1226 applicable, considers the *Mathews* factors as applied to this case, and
2  evaluates whether Petitioner's re-detention comported with constitutional due process
3  requirements.
4  　　　First, Petitioner has a constitutionally protected interest in his continued liberty.  His
5  interest in not being detained "is the most elemental of liberty interests[.]"  *Hamdi v. Rumsfeld*,
6  542 U.S. 507, 529 (2004).  Since his initial release approximately two years ago, Petitioner
7  reunited with his immediate family members, established himself in Washington, and found
8  employment as a rideshare driver after receiving work authorization.  *See* Dkt. 1 at 3.  Even if the
9  Government had initial discretion to detain or release Petitioner, its decision to release him
10 triggers "a protected liberty interest in remaining out of custody[]" applicable here.  *Pinchi v.*
11 *Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  The first *Mathews* factor weighs in
12 Petitioner's favor.
13 　　　Second, the circumstances of Petitioner's arrest underscore the high risk of erroneous
14 deprivation of his liberty absent a pre-detention hearing.  Petitioner asserts that he never failed to
15 submit required weekly photos through BI SmartLINK, that he never received any response from
16 his Deportation Officer after submitting photos, and that the BI SmartLINK application made it
17 difficult to confirm whether his photos were being received.  *See* Dkt. 9-1 at 3–4.  He states that
18 he also attended in-person ICE appointments after submitting late photos, and no issues with his
19 ATD compliance were raised.  *See id.* at 4.  He also points out that news organizations have
20 reported that the BI SmartLINK application consistently malfunctions, that users have difficulty
21 confirming receipt of their photo reports, and that ICE consistently fails to follow up or request
22 re-submission of reports.  *See* Dkt. 9 at 3; Dkts. 9-2–9-3.  Respondents merely assert, with no
23 detail or supporting records, that Petitioner "missed" thirty ATD photo check-ins.  *See* Dkt. 6 at

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

2; Dkt. 7 at 3–4. They do not address whether Petitioner's photos were received late, or not at all. Petitioner's re-detention prior to a hearing in which factual questions regarding his compliance with ATD photo report requirements could be resolved maximized the risk that his liberty interest would be erroneously deprived. The second *Mathews* factor favors Petitioner.

Finally, the Government's countervailing interest in detaining Petitioner prior to a hearing is minimal. He filed an application for asylum that remains pending. His application was tethered to his family unit's applications, which are slated for a merits hearing later this year. He continued residing with his family and maintained employment. The alleged violations were apparently not acted upon by ICE during or proximate to any in-person check-ins that Petitioner attended. In their Return, Respondents point to no exigency that required Petitioner's immediate re-detention on December 27, 2025, or any indication that he had become a flight risk or danger to the community. In sum, the Government's general interest in removing deportable non-citizens would not have been, in any discernable way, burdened by affording Petitioner notice and a hearing prior to re-detaining him on untested violation allegations. *See Yildirim*, 2026 WL 111358, at *4 ("That Petitioner's alleged violation occurred more than a year before it was acted upon, and Petitioner checked in multiple times with Government offices where the alleged violation could have been addressed but was not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable."). Accordingly, the third *Mathews* factor also weighs in Petitioner's favor.

The Court concludes that Petitioner has shown, by a preponderance of the evidence, that he is being unconstitutionally held. Petitioner was entitled to due process before being deprived of his liberty interest in continued release. Because no pre-deprivation hearing was held before

he was re-detained, his constitutional right to due process was violated. In view of this conclusion, the Court does not address Petitioner's additional claims alleging Administrative Procedure Act violations.

Remarkably, Respondents contend that, because Petitioner "is no longer released on parole or subject to an OREC, a pre-detention hearing would be futile." *See* Dkt. 6 at 5. Not so. The Constitution entitled Petitioner to a meaningful pre-detention hearing before a neutral decisionmaker *before* he was re-detained. That right was violated, and a writ of habeas corpus now issues as the remedy. To the extent Respondents forecast that any hearing provided at this point would march, pro forma, towards a foregone conclusion, such a hearing would not constitute a meaningful opportunity to be heard before a neutral decisionmaker. Such a hearing would indeed likely prove futile—for Respondents. Petitioner's re-detention could not constitutionally result.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition at Docket No. 1 and ORDERS that Petitioner be IMMEDIATELY released from custody subject to the same conditions of release that governed before he was re-detained. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice of his alleged release violations. Within **twenty-four (24) hours** of the issuance of this Order, the Government is ORDERED to file a declaration confirming that Petitioner has been released.

///

///

///

1 | Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 3rd day of February, 2026.

*S. Kate Vaughan* (signature)

S. KATE VAUGHAN
United States Magistrate Judge